WILLIAM T. WILLIAMSON, plaintiff in error, vs. GEORGE MATTHEWS, defendant in error.

1. A grant issues to W., pursuant to a special Act of the Legislature, for a lot of land in this State. In relation to that grant the Court instructs the jury, "that if the plaintiff had procured the grant to be issued by false and fraudulent representations to the General Assembly and the Governor, he was not entitled to recover of a party who had no notice of the proceedings:" *Held*, That under the evidence in the case in which it was given, the charge was erroneous.

2. In such case, it does not lie in the mouth of a party to call in question the grant on that or any other ground, unless he first makes it appear that the grant affects him or his interest in the land granted.

3. Under the Act of the 9th of June, 1825, it is not indispensable that there should be a formal judgment of the Court pronouncing a grant, issued upon a fraudulent return, void, and ordering it to be cancelled. It is sufficient, that there be a verdict of the jury, finding the return fraudulent, upon an issue properly made up, under the direction of the Court, to try the question of fraud.

Ejectment, in Coweta Superior Court. Tried before his Honor Judge BULL, at September Term, 1860.

This was an action, brought in the short form of complaint, in favor of William T. Williamson against George Matthews, to recover the north half of lot of land No. 120, in the second district of Coweta county.

On the trial the plaintiff proved that the premises in dispute were situated in said county, and that the defendant was in possession of the same at the time the suit was instituted, and had been for many years before that time.

The plaintiff also read in evidence a grant from the State of Georgia to the plaintiff for the land in controversy, dated in 1854, and reciting on its face that it was issued to the said plaintiff by virtue of an act entitled " *An Act to authorize a grant to issue to William T. Williamson, of the county of Baldwin, to lot of land No. 120, in the second district of the fourth section of the lottery of* 1827." Approved February 18th, 1854.

The plaintiff rested his case at this point.

The plaintiff introduced in evidence the Act of which the

title is given as aforesaid, the preamble to which recites: that Robert Attaway fraudulently drew lot of land No. 120, in the second district of the fourth section, Coweta county, and that said lot was condemned, on information of Joel Kinsey, as fraudulently drawn, at September Term, 1828, of the Superior Court of Coweta county, and that the State's interest not having been sold, and the informant, Joel Kinsey, failing to comply with the terms and requisitions of the law, the said lot of land reverted to the State, under an Act of the General Assembly, passed at the last session, headed, "*An Act to limit the time for taking out grants to the State's half, and to the informer's half, of any lot of land fraudulently drawn, in any of the land and gold lotteries of this State, and to provide for the granting of the same after the expiration of said time;*" and that the said William T. Williamson, in compliance with the requirements of this Act, having paid into the State Treasury, on the 2d of August, 1852, the sum of $25 00, the price of the informant's and State's half of said lot of land, and that in consequence of the judgment having been mutilated on the record, and the original being lost or stolen, he has failed to get a grant for remedy whereof, Section 1 enacts that it shall be the duty of the proper officers, upon the Governor being satisfied that the facts stated in the foregoing preamble be true, to issue a grant to the said fraudulently drawn lot, to the said William T. Williamson, it being lot of land No. 120, in the second district and fourth section of Coweta county. *Provided,* that this Act, or the grant, shall not affect the rights of any other persons claiming title.

For the purpose of attacking the plaintiff's grant, and of showing that it was procured by fraud on the part of the grantee, the defendant offered in evidence the record of a *scire facias,* issued on the 8th day of June, 1827, in favor of George M. Troup, Governor, etc., on the information of Joel Kinsey, against Robert Attaway, drawer of lot of land No. 120, in the second district of Coweta county.

The *scire facias* alleged that Attaway caused his name to be entered for two draws in the land lottery authorized and

directed by the Acts of the 9th of June and the 24th of December, 1825, and the 14th December 1826, and the 27th December in the year aforesaid, when he was not entitled to the same, because before he caused his name to be entered, and at the time he drew the lot aforesaid, he had absconded for debt and to avoid the laws of the State, and had not paid his taxes according to law, and the writ called upon him to show cause why the return should not be adjudged fraudulent and the grant annulled, and the land revert to the State.

On the 27th March, 1828, there was a return on the *scire facias* that the defendant was not to be found in Coweta county, and at September Term, 1828, an order was taken reciting defendant's default, and directing the informer to proceed *ex parte* in said case. The following verdict was rendered:

"We the jury find the return fraudulent.
"R. M. HACKNEY, Foreman."

The following judgment was taken in the case, to-wit:

"Whereupon it is considered and ordered by the Court that said return be adjudged and pronounced fraudulent and void; that the grant issued for the said lot or tract of land drawn in pursuance of said return, to-wit: for No. 43, in the 5th district of Coweta county, be cancelled and annulled, and made void and of no effect, and as completely set aside as if no grant had ever issued, and the informer recover costs, etc. October 12th, 1829.
"WILLIAM Y. HANSELL,
"Informer's Attorney."

To the introduction of this record the plaintiff's counsel objected, but the Court overruled the objection and plaintiff excepted.

Here the testimony closed, and the presiding Judge charged the jury, "that the presumption of law was in favor of the grant, and that it was fair and valid, and the burden of proving it to have been procured fraudulently, was on the

Williamson *vs.* Matthews.

defendant; that if the plaintiff had procured the grant to issue, by false and fraudulent representations to the General Assembly and the Governor, he was not entitled to recover of a party who had no notice of the proceedings; that a record was not mutilated while it remained in the condition in which it was made up by the Court, but that there must be some erasure, interlineation, or other alteration of the record, unauthorized by the Court, in order to constitute what in legal parlance amounts to a mutilation; that if there had never been any judgment of forfeiture of this land, and no mutilation of the records of the Court, and if this grant was procured to be issued by false and fraudulent representations that there had been such a judgment, and a mutilation of that judgment, then the grant was void as to third parties, who had no notice of the proceedings before the Legislature and the Governor.

The jury found for defendant, and plaintiff excepted and prosecutes a writ of error, and asks a reversal of the judgment, on the grounds:

1. Because the Court erred in admitting the record aforesaid.

2. Because the Court erred in charging the jury as aforesaid.

Hugh Buchanan, for plaintiff in error.

R. W. Sims, for defendant in error.

*By the Court.*—Lyon, J., delivering the opinion.

1st. The Court charged the jury, " that if the plaintiff had procured the grant to be issued by false and fraudulent representation to the General Assembly and the Governor, he was not entitled to recover of a party who had no notice of the proceedings." Was this charge right? We think, under the evidence, it was not. Whether the grant was procured by false or fraudulent representation was a question, as the case stood on trial, in which the State also was interested, and as the State had acquiesced in the grant, and made no

effort to recall it, it is to be presumed that she has waived or ratified the grant, notwithstanding it may have been obtained by false and fraudulent representations. It does not lie in the mouth of the defendant to call in question the grant on that or any other ground, unless he first makes it appear that the grant affected him or his interest in the land.

On the trial the defendant did not show that he had any interest or claim to the land that was prejudiced by this grant. It was true that he, or those under whom he held, was in possession of the land, but that is not such interest or claim to the land as can affect the right of the State to issue its grant to the land, for possession is never adverse to the State, and cannot, no matter how long continued, or in what good faith made, ripen into a title, or prejudice the right of the State to issue its grant therefor when and as it pleases. And in this sense the defendant was not entitled to a notice of the proceeding. To have been entitled to a notice of the proceeding, it was necessary for him to have shown that he held under a title from or under the former grant before it was declared to be fraudulent.

The Court further charged, that if there never had been any judgment of forfeiture of the land, and no mutilations of the records of the Court, and if this grant was procured to be issued by false and fraudulent representations that there had been such a judgment, and a mutilation of that judgment, then the grant was void as to the third persons, who had no notice of the proceedings before the Governor and Legislature.

The charge amounts to this, that if there was no judgment of forfeiture of the land as against the original drawer of the lot, Attaway, then this new grant to Williamson was void.

The charge misconceives the sense, purport and letter of the act of 9th June, 1825, Dawson's Compilation, 256, under which the proceedings against the fraudulent grants were had. That act declares that all returns (of chances in that lottery) made contrary to the true intent and meaning of this act to be fraudulent, and all grants issued in consequence of any draw made in the contemplated lottery on such fraudulent

returns, are hereby declared to be *null and void,* and the lands so granted or drawn shall revert and become the property of the State.   The *question of fraud to be tried upon scire facias, etc., upon an issue to be made up under the direction of the Court to try the question of fraud,* and in case the jury shall find the return fraudulent, the Court shall, by judgment, pronounce the grant, issued on such return and draw, to be void, and order it cancelled, which judgment, when transmitted to the Surveyor General's office, and Secretary of State's office, and entered on file, shall be of sufficient authority to those officers to cancel the plats and grants for such fraudulent draws in their offices respectively.

From the terms of this act, it is manifest that if the return was fraudulent, the grant that issued for the draw, or lot drawn on such fraudulent return, is also totally *null* and *void,* not voidable, but void, a mere nullity.   Whether the return was fraudulent, was to be ascertained, not by the judgment of the Court, but by the verdict of a jury, on an issue to be made up and tried under the direction of the Court.   That issue was made up and tried in this case, and a verdict of the jury rendered, that the return was fraudulent, and in that case the law declares the grant to be null and void.   It is true that the statute directs that the Court shall, by judgment, pronounce the grant to be void, and order it to be cancelled, etc.   But these are the mere formal directions and instructions of the law to its agents as to what they shall do, and in which the grantee, or those holding under him, have no interest, that may be dispensed with or entirely omitted, without affecting the rights of the grantee.

The great fact which settles the rights of the grantee, and on which the law acts, has been ascertained in the manner pointed out by the act; that is, that the return was fraudulent, and the grant, therefore, void.

Whether the Court pronounced the judgment required by law, or the Surveyor-General and Secretary of State performed the duties required by them or not, the fact still remains as ascertained by the jury, that the return was fraudulent, the grant void, and the title to the land still in

VOL. XXXII—34.

the State, with a consequent right to regrant the same at such times as it pleased.

Let the judgment be reversed.